Filed 5/26/21  P. v. Riley CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B298450 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA079324) |
| v. | |
| SAID RILEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

In 2011, a jury convicted defendant and appellant Said Riley (defendant) on two counts of murder (one first degree murder and the other second degree) and two counts of robbery. The jury found true a multiple murder special circumstance, which resulted in a life without possibility of parole sentence on the first degree murder conviction. After enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to Penal Code section 1170.95.[1] We consider whether the trial court correctly concluded the jury did not rely on the felony murder rule or the natural and probable consequences doctrine in convicting defendant—and thus, that defendant was ineligible for resentencing as a matter of law.

## I. BACKGROUND

Defendant filed a motion in this court asking us to judicially notice the appellate opinion resolving his (and his co-defendant Eddie Betancourt's) direct appeal: *People v. Betancourt et al.* (Mar. 11, 2013, B237204) [nonpub. opn.] (*Betancourt*). We grant the motion and rely on the prior opinion in describing the facts of the murders and in certain aspects of our analysis that follows our summary of the facts. (See generally *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1139 & fn. 7, review granted Mar. 18, 2020, S260598; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 335, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

Early on the morning of April 24, 2008, officers from the Los Angeles Police Department responded to a 911 call of shots

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

fired in an alley. When the officers arrived at the scene, they found the body of Lauri Gilbert (Gilbert) in the front passenger seat of a two-door Acura Legend. She had been shot three times in the head. Gilbert was pregnant at the time she was shot, and the fetus died as a result of her death.

James Davis (Davis), who owned the Acura and who had made the 911 call, told police that he had been part of a group that had gone looking to buy drugs. In addition to Davis, the group included defendant, Eddie Betancourt (Betancourt), and victim Gilbert. Davis drove the group to an alley behind a library, where Gilbert got out of the car and disappeared down the alley. When she returned, the drugs she purchased were weighed and found to be "short" (i.e., less than what the group had paid to receive), a fact that appeared to make Betancourt and defendant upset.

After trying but failing to find the seller of the drugs, Davis drove back to Gilbert's apartment and parked in the alley. Davis, Betancourt, and defendant got out of the car. As Davis walked toward the rear of the vehicle, Betancourt pulled out a gun and pointed it at Gilbert. When Davis heard a gunshot, he ran away. As he ran, Davis heard two additional gunshots. Other witnesses also described hearing one shot followed by a pause and then two or more shots.

At trial, Betancourt testified he fired a shot that did not hit Gilbert and defendant then grabbed the gun and shot and killed her. Defendant, in an interview with investigating officers (a recording of which was played at trial), denied shooting Gilbert. He also denied being in the same car as Davis, Betancourt, and Gilbert, or being present when Gilbert was shot.

3

As relevant for our purposes, the trial court instructed the jury on aiding and abetting principles,[2] murder generally, and the elements of first and second degree murder specifically. The jury was not instructed on the natural and probable consequences theory of aiding and abetting. Nor was the jury given then-customary felony murder instructions; the court understood, as it said in discussions with counsel, that "'this isn't a felony murder case.'" The trial court did, however, give the jury an instruction patterned on CALJIC No. 8.10 that generally defined murder. The instruction as given erroneously included language that could have been read, in isolation, to permit a finding of murder liability based on commission of a felony, specifically, assault with a firearm. Here is how *Betancourt* describes it: "CALJIC No. 8.10, as given in this case, told the jury that 'Every person who unlawfully kills a human being or fetus with malice aforethought or a felony inherently dangerous to human life is guilty of the crime of murder in violation of Penal Code section 187.' Under the typed words 'to human life' the phrase 'assault with a firearm' is handwritten in. The instruction also states:

---

[2]    As recounted in *Betancourt*: "The jury was instructed that a person aids and abets a crime if he knows of the unlawful purpose of the perpetrator, has the intent or purpose of committing or encouraging the commission of the crime and aids or encourages the intended crime. The instructions further stated that an aider and abettor's guilt is determined by the acts of the participant and that person's 'own mental state.' The instructions also told the jury that an aider and abettor might have a more culpable or less culpable mental state than the actual perpetrator and that the aider and abettor's guilt could therefore be greater or less than the actual perpetrator's guilt."

4

'The killing was done with malice aforethought or ___ a felony inherently dangerous to human life namely assault with a firearm ___ is a felony inherently dangerous to human life.'"

This instruction generally defining murder, of course, was not the only murder instruction the jury received. The jury was also given an instruction describing the elements of first degree murder, including the requirement of proof of express malice, as well as an instruction defining malice itself. Neither of these instructions made reference to an inherently dangerous felony like the general instruction patterned on CALJIC No. 8.10 did.

Following the defense closing argument, the trial court clarified for the jury the theories of murder that were at issue and felony murder was not among them: "In this case there are three degrees of murder or three theories of murder that are being presented to you. [¶] One is first degree murder where you have an intent to kill and there is premeditation and deliberation. [¶] There are two types of second-degree or two degrees of second degree murder. One where you have [an] intent to kill with no premeditation and deliberation. [¶] And the second that we are calling implied malice murder where an act is done without intent to kill and the natural consequences of which are dangerous to human life. [¶] Depending upon what you find to be the facts, those three different types may apply to count 1 [the alleged murder of Gilbert] with respect to either defendant. But only the second-degree implied malice applies to count 2 [the alleged fetal murder]."

The jury convicted defendant (and Betancourt) of first degree murder on count one and second degree murder on count

two.[3] The jury found true the multiple murder special circumstance allegation. The jury also found true allegations that Betancourt (1) personally and intentionally discharged a firearm causing great bodily injury or death, in connection with the charge of murdering Gilbert and (2) personally and intentionally discharged a firearm, in connection with the fetal murder charge. The jury found personal use and discharge of a firearm enhancements alleged against defendant to be not true— indicating the jury believed Betancourt was the actual killer.

On appeal from the criminal judgment, this court addressed instructional error claims that necessitated opining on the theory of murder the jury relied on in convicting defendant. We held defendant's conviction for the first degree murder of Gilbert and the associated multiple murder special circumstance true finding appropriately rested on instructions that required the jury to find defendant (and Betancourt) intended to kill her. We further held the jury instructions, considered as a whole and in light of the statement made by the trial court concerning the theories of murder at issue, dispelled any reasonable possibility that the jury "understood the isolated reference in CALJIC No. 8.10 referring to an inherently dangerous felony" to permit conviction of defendant for either murder on a felony murder theory. Specifically, as to the first degree murder conviction, this court held it was "not reasonably likely" that the jury relied on the felony murder rule without finding malice. As to the second degree murder conviction, this court opined "the jury must have found that [defendant and Betancourt] acted with implied

---

[3] The jury also found defendant guilty on the robbery charges, which were unrelated to the murders.

6

malice" in light of the facts (including firing a gun at Gilbert's head multiple times at close range).

Years later, defendant filed a section 1170.95 petition for resentencing. He checked boxes on the form petition asserting he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine and he could not be convicted of first or second degree murder because of changes made to section 188 or section 189 by Senate Bill 1437. He also requested appointment of counsel.

The trial court denied the petition without first appointing counsel for defendant. Expressly relying on our decision in *Betancourt*, the court found defendant was not entitled to relief as a matter of law because he "was convicted as a direct aider and abettor . . . with his own intent to kill. He was not convicted under a theory of felony-murder or a theory of natural and probable consequences. [¶] . . . The appellate opinion affirming [defendant's] conviction . . . reflects that [defendant] was convicted of murder on a theory of being a direct perpetrator . . . ." In the alternative, the court also found (incorrectly, but we need not get into it) that Senate Bill 1437 was unconstitutional.

## II.  DISCUSSION

If a trial jury is not instructed on murder liability pursuant to the natural and probable consequences doctrine or the felony murder rule, a section 1170.95 petitioner cannot, as a matter of law, demonstrate he or she is eligible for section 1170.95 relief. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted Jul. 22, 2020, S262835 ["if the jury

7

was not instructed on a natural and probable consequences or felony-murder theory of liability, the petitioner could not demonstrate eligibility as a matter of law because relief is restricted to persons convicted under one of those two theories"] (*Smith*).)  Though determining whether the jury was so instructed here requires some elaboration, the record establishes neither of defendant's murder convictions rest on either of these two theories of murder liability.  The trial court was therefore entitled to deny his section 1170.95 petition without first appointing counsel.[4]  (*Verdugo, supra,* 44 Cal.App.5th at 330, rev. gr.; *Smith, supra,* at 92 ["If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition"], rev. gr.)

Taking natural and probable consequences murder first, the analysis is easy.  As our opinion in *Betancourt* notes, the jury was not instructed on natural and probable consequences

---

[4]    Defendant has no *constitutional* right to appointed counsel. (See, e.g., *People v. Falcon* (2020) 57 Cal.App.5th 272, 279, review granted Jan. 27, 2021, S266041; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; *Smith, supra,* 49 Cal.App.5th at 92, rev. gr.; see also *Dillon v. United States* (2010) 560 U.S. 817, 828-829 [holding Sixth Amendment inapplicable to sentence modification proceedings]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["[T]he retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis"]; *In re Clark* (1993) 5 Cal.4th 750, 780 [constitutional due process guarantees demand appointment of counsel in postconviction proceedings "*if* a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause"], italics added.)

murder.  Defendant does not contend otherwise.  That removes one of the two potential bases for section 1170.95 relief.

The issue of felony murder is slightly more complicated but the result is the same.  The trial court recognized "'this isn't a felony murder case'" and defendant's jury accordingly did not receive felony murder instructions.  The twist, of course, is the jury was given the incorrect version of the CALJIC No. 8.10-patterned general murder instruction that referred to a felony inherently dangerous to human life and specified assault with a firearm.  But that doesn't matter.  The instructions considered as a whole and the jury's multiple murder special circumstance true finding leave no doubt the jury found defendant intended to kill Gilbert—and his first degree murder conviction properly rests on a finding of express malice, a ground for murder liability that remains valid after Senate Bill 1437.  That means defendant is not entitled to resentencing on his first degree murder conviction. (*Verdugo*, *supra*, 44 Cal.App.5th at 330 ["The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 . . ."], rev. gr.)  Defendant is also ineligible for resentencing as a matter of law on his second degree murder conviction because, as *Betancourt* holds (and we independently agree), the evidence and instructions at trial establish the jury's determination of guilt rests on a finding of implied malice, which again is a ground for murder liability that remains valid after Senate Bill 1437.

9

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.